**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**DARYL ANTHONY GREEN**

    Appellant,

    v.

**PRINCE GEORGE'S COUNTY OFFICE OF
CHILD SUPPORT** *et al.*,

    Appellees.

Civil No. **PJM-21-2441**

**MEMORANDUM OPINION**

"Today, America's courts appear to be facing an inexorably rising tide of pro se litigation. We have neither enchantment to blame for our dilemma nor a magician to set things right." Stephan Landsman, *The Growing Challenge of Pro Se Litigation*, 13 Lewis & Clark L. Rev. 439, 440 (2009). "Pro se cases pose inherent problems: they can cause delays, increase administrative costs, undermine the judges' ability to maintain impartiality and can leave the often unsuccessful litigant feeling as though she has been treated unfairly." *Id.* at 439.

Daryl Anthony Green, a resident of Accokeek, Maryland, acting pro se, has a history of filing frivolous, repetitive, and vexatious pleadings in the United States Bankruptcy Court for the District of Maryland and the United States District Court for this District. His litigation activity since 2019, which has been extraordinarily reckless, even at times malicious, has consisted of three bankruptcy petitions, five bankruptcy adversary proceedings, twenty bankruptcy appeals to the District Court, and eight appeals to the United States Court of Appeals for the Fourth Circuit. His numerous pleadings, all substantially identical, include rambling allegations of fraud and civil rights violations, even crimes on the part of his adversaries. These tactics have placed a substantial

1

burden on his adversaries, the Clerk's Offices of the Bankruptcy and District Courts, and the Judges of both Courts, and have been detrimental to bona fide users of the bankruptcy system.

After recently resolving several of Green's meritless appeals, this Court ordered him to Show Cause, in writing, by a date certain why he should not be sanctioned on account of his persistent filing of meritless claims.  Green failed to respond to the order in any way.  Despite being reminded in separate correspondence sent directly to him by Chambers that he could appear at the Show Cause Hearing with counsel, cross-examine witnesses and call his own witnesses if he chose to do so, Green remained mute.  On March 31, 2022, the Court held the scheduled Show Cause Hearing, at which Green failed to appear.  At the hearing, the Court took testimony from representatives of the Bankruptcy Court Clerk's Office and the District Court Clerk's Office. Based on that testimony, as well as the Court's own extensive review of Green's multiple pleadings in both courts, the Court concludes that Green has engaged in serious abuse of the court systems and that significant sanctions against him are warranted.

## BACKGROUND

The instant case is one of Green's many bankruptcy proceedings stemming from his 2019 bankruptcy petition.  From all that appears, his cases arise from disputes over just two matters that he is committed to delay and defeat: foreclosure of a mortgage on his residence in Accokeek, Maryland, and a child support order from Prince George's County, Maryland.

## I.  The 2019 Bankruptcy Petition and Related Proceedings

Green has filed three voluntary Chapter 13 petitions for bankruptcy,[1] instituted five bankruptcy adversary proceedings,[2] appealed at least 20 orders of the Bankruptcy Court to the District Court,[3] and taken eight appeals to the Court of Appeals for the Fourth Circuit.[4]  These litigation tactics have occasioned stays in a parallel state court foreclosure proceeding involving his residential property in Accokeek.  To date, however, all of Green's bankruptcy petitions and related adversary proceedings have been dismissed.[5]  No immediate enforcement action by the Prince George's County Office of Child Support appears to be in progress.

Green's marathon of bankruptcy-related filings began on March 18, 2019, when he first filed a voluntary Chapter 13 petition for bankruptcy.  Case No. 19-bk-13565-LSS.  His motions and appeals in that case challenged two proofs of claim submitted by his creditors, one related to the mortgage note on his residence (the "Mortgage Claim"), the other related to an unsatisfied child support obligation brought by the Prince George's County authorities (the "Child Support Claim").  Green interposed multiple objections to both proofs of claim.  Case No. 19-bk-13565-LSS, Dkt. Nos. 17, 28, 42, 43, 235, 262.

---

[1] Case Nos. 19-bk-13565-LSS, 21-bk-17359-LSS, and 22-bk-11755-LSS.  An involuntary petition, Case No. 22-bk-12906, was filed on May 27, 2022 and is discussed *infra*.

[2] Adversary Proceeding Nos. 19-ap-00298-LSS, 19-ap-00308-LSS, 20-ap-00246-LSS, 20-00247-ap-LSS, and 21-ap-00065-LSS.

[3] See Appendix 1.

[4] 4th. Cir. Case Nos. 20-1825, 20-1833, 21-1036, 21-1047, 21-1048, 21-1349, 21-1925, and 21-1927.

[5] The present docket appears to be the last pending appeal taken by Green to the District Court.  For reasons stated *infra*, the appeal will be dismissed, but for enforcement purposes the Court's separate Order of Sanctions will remain operative.

### A.  The Mortgage Claim

Judges of this Court have previously addressed other appeals by Green of Bankruptcy Court orders relating to the Mortgage Claim.  In addition to Green's appeals that this member of the District Court has handled, the Court in the present case incorporates by reference all the opinions and orders resolving those appeals.  *See Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Nat'l Ass'n*, 619 B.R. 121 (D. Md. 2020), *appeal dismissed sub nom. Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Newrez LLC*, 834 F. App'x 14 (4th Cir. 2021), and *aff'd sub nom. Green v. Shellpoint Mortg. Servicing*, 834 F. App'x 18 (4th Cir. 2021).

To recap:

An entity known as 1900 Capital, as putative holder of the mortgage on Green's residence, in conjunction with its loan servicer, Shellpoint, filed a proof of claim asserting that Green owed it $687,049.04.  The Proof of Claim was based on a note Green executed on August 24, 2007, in which he promised to repay, as of that time, a $417,000 mortgage loan.  The same day, Green also executed a deed of trust granting Mortgage Electronic Registration Systems, Inc. a security interest in the property at 15416 Cedar Drive in Accokeek, Maryland (the "Property").[6]

Green challenged the Mortgage Claim, filing three separate Objections, in which he contended that the claim was "knowingly false" because he owned the home "outright without any

---

[6] On June 11, 2015, prior to Green's voluntary Chapter 13 petition for bankruptcy, a foreclosure action on the Property was filed in the Circuit Court for Prince George's County, Maryland.  *Rosenberg v. Green*, No. 15-16453 (Md. Cir. Ct.); *see In re Papatones*, 143 F.3d 623, 625 n.3 (1st Cir. 1998) (noting in a bankruptcy appeal that "appellate courts may notice another court's record as an adjudicative fact").  After prolonged litigation, the case appears to have been stayed pending resolution of Green's then-operative bankruptcy petition.

Separately, on March 17, 2017, Green filed a civil case directly in this Court against the parties and counsel involved in the state foreclosure action. *Green v. Rosenberg & Assocs., LLC*, No. PJM-17-0732, 2018 WL 1183655, at *1-2 (D. Md. Mar. 7, 2018). This Court dismissed the case and denied Green's motion for reconsideration.  Green appealed both Orders to the Fourth Circuit which, on July 23, 2018, affirmed both Orders.  *Green v. Rosenberg & Assocs., LLC for PrimeStar-H Fund I Tr.*, 731 F. App'x 240, 241 (4th Cir. 2018).

encumbrances" and because he possessed "his original wet ink further mortgage notes marked cancelled." *See, e.g.*, Case No. 19-bk-13565-LSS, Dkt. Nos. 28, 43. Green argued that the Note was "illegitimate" and that the state foreclosure action on the Property was unlawful. *See id.*

In its orders overruling his objections, the Bankruptcy Court explained that Green's "wet ink" and "show me the note" arguments had been repeatedly rejected by Maryland courts. Case No. 19-bk-13565-LSS, Dkt. No. 40 at 2–3 (citing *Powell v. Countrywide Bank,* CV PX 16-1201, 2016 WL 5815884, at *5 (D. Md. Oct. 4, 2016)). Green appealed these Orders to the District Court, resulting in Civ. No. TDC-19-2270. *See Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Nat'l Ass'n*, 619 B.R. 121 (D. Md. 2020), *appeal dismissed sub nom. Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Newrez LLC*, 834 F. App'x 14 (4th Cir. 2021), and *aff'd sub nom. Green v. Shellpoint Mortg. Servicing*, 834 F. App'x 18 (4th Cir. 2021). The same day he filed his appeal, Green commenced an Adversary Proceeding against Shellpoint. No. 19-ap-00247-LSS (discussed *infra*).

On appeal, the District Court entered an Order affirming in part, vacating in part, and remanding in part the Bankruptcy Court's Order overruling Green's first Objection to the Mortgage Claim. Civ. No. TDC-19-2270, ECF No. 20. The District Court vacated the Order "only as to Green's argument regarding the purported fraudulent nature of the [mortgage note]" and remanded the case to the Bankruptcy Court "to make findings of fact and address that argument." *Id.* On remand, the Bankruptcy Court set a hearing on the fraud issue. Case No. 19-bk-13565-LSS, Dkt. No. 176. Green, however, appealed the District Court's order to the Fourth Circuit, as a result of which the remand hearing was postponed. Case No. 19-bk-13565-LSS, Dkt. No. 182. The Fourth Circuit subsequently dismissed Green's appeal because the District Court's order was neither a final order nor an appealable interlocutory or collateral order. *Id.*, Dkt. No.

186.  The Bankruptcy Court then rescheduled the remand hearing which, however, was postponed for more than a year due to the pendency of Green's numerous other motions and proceedings.

At the same time, Green filed a further Objection to the Mortgage Claim, stating that Shellpoint had sold its interest in the Property and therefore its proof of claim was invalid.  Case No. 19-bk-13565-LSS, Dkt. No. 235.  Yet again he asserted the "wet ink" and "show me the note" arguments.  *Id.*  He also filed a "supplemental motion to dismiss" the Mortgage Claim.  *Id.*, Dkt. No.  249.  Shellpoint opposed the motion, arguing that Green's Objection was barred by res judicata, since it had been addressed in no less than six orders issued by the Circuit Court for Prince George's County, three decisions of the Court of Special Appeals of Maryland, three decisions of the U.S. District Court, and one decision by the Fourth Circuit.  *Id.*, Dkt. No. 252. Shellpoint further argued that Green's Objection was barred by reason the *Rooker-Feldman* doctrine—which prohibits federal courts from sitting in appellate review of final state-court judgments—because the claim had been already deemed valid in various state court decisions.  *Id.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005) ("The *Rooker-Feldman* doctrine prevents a district court from entertaining suits by "state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").  The court denied Green's motion to dismiss.

The Bankruptcy Court again attempted to reset the fraud hearing, Dkt. 277, but the case was dismissed prior to the hearing because Green had failed to make child support payments.

### B.  The Child Support Claim

Judges of this Court have had occasion to describe the Prince George's County Office of Child Support's (PGOCS) Proof of Claim in considerable detail.  This Court incorporates by

reference all the opinions and orders resolving those appeals. *See Green v. Prince George's Cty. Off. of Child Support*, No. CV TDC-19-2852, 2020 WL 4436371, at *1 (D. Md. Aug. 3, 2020), *reconsideration denied*, No. CV TDC-19-2852, 2021 WL 1062013 (D. Md. Mar. 19, 2021), *aff'd*, 858 F. App'x 652 (4th Cir. 2021); *Green v. Prince George's Cty. Off. of Child Support Enf.*, No. TDC-19-3449 (D. Md. Dec. 23, 2020) (ECF No. 14).

To summarize:

PGOCS asserts that Green owes $19,915.88 in unpaid child support in connection with a divorce proceeding dating back to 2011. In the divorce case, a Maryland state court originally ordered him to pay $407 per month in child support. While Green made sporadic payments, soon enough he decided that this was a hill he would plant his flag on and stopped paying. Several follow-up actions were required to enforce the order, including a decision of Prince George's County to suspend his driver's license.[7]

---

[7] The Maryland Motor Vehicle Administration ("MVA") assists the Child Support Enforcement Administration in collecting child support payments by suspending the driving privileges of customers who have not complied with child support orders. *See Child Support Sanctions*, Maryland Department of Transportation, mva.maryland.gov/about- mva/Pages/info/26100/26100-40T.aspx (last visited May 31, 2022). Section 10-119 of the Family Law Article of the Maryland Code sets forth this statutory. It provides "the [Child Support] Administration may notify the Motor Vehicle Administration of an obligor with a noncommercial license who is 60 days or more out of compliance . . . with the most recent order of the court in making child support payments," and "[u]pon notification by the Administration under this subsection, the Motor Vehicle Administration shall suspend the obligor's license or privilege to drive in the State." If an individual cannot pay the full amount of the child support, he or she may be permitted to retain some driving privileges. *Id.*

"It is well settled that a driver's license is a property interest that may not be suspended or revoked without due process." *Plumer v. State of Maryland*, 915 F.2d 927, 931–32 (4th Cir. 1900) (citing *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The Fourth Circuit has determined that MVA's procedures satisfy the constitutional due process requirements for driver's license suspensions because MVA provides a licensee of written notice prior to license revocation, makes hearings available, and provides the factual basis for the suspension. *Plumer v. State of Maryland*, 915 F.2d 927, 931–32 (4th Cir. 1990).

Accordingly, throughout the pendency of his bankruptcy proceedings, Green has challenged both the Child Support Claim filed by PGOCS and the underlying child support order. He filed two separate Objections to the Child Support Claim, both of which were overruled, Case No. 19-bk-13565-LSS, Dkt. Nos. 17, 42, then moved to dismiss the Child Support Claim, *Id.*, Dkt. No. 94. Green argued, in what would become a constant refrain, that the claim was "invalid" because his paternity had never been established, which made the original child support order "illegal, unjust and irregular" and without any "valid legal or factual basis." He also accused Maryland government officials of committing knowing fraud in securing the entry of the order against him. *Id.* at 2–4.

The Bankruptcy Court explained that Green appeared "to be asking [the] Court to exercise appellate review of the state court's child support award," which the court felt it could not do by reason of the *Rooker-Feldman* doctrine. Case No. 19-bk-13565-LSS, Dkt. No. 32 (citing *In re Thomas*, 04-26010 NVA, 2006 WL 5217796, at *2 (Bankr. D. Md. Feb. 21, 2006)).

Following the Bankruptcy Court's denial of Green's motion to dismiss its claim, PGOCS moved to dismiss Green's bankruptcy case pursuant to 11 U.S.C. § 1307(c)(11), which permits a court, "on request of a party in interest or the United States trustee and after notice and a hearing," to dismiss a Chapter 13 bankruptcy case for cause, including "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." *Id.*, Dkt. No. 105. PGOCS reiterated that Green had not made a single payment since May 17, 2017, nearly two years prior. *Id.*

In various papers after PGOCS filed its motion to dismiss, Green returned to his set form that the child support order was fraudulent and that any child support debt was "void ab initio" because the state court had no jurisdiction to establish parentage. *See, e.g.*, *Id.*, Dkt. No. 111.

8

The Bankruptcy Court held a hearing on the motion to dismiss (at which Green failed to appear) and dismissed the case. *Id.*, Dkt. No. 142. Green moved for reconsideration, claiming that he had been involved in "a near fatal vehicle incident" the day of the hearing. *Id.* The Bankruptcy Court vacated the dismissal and rescheduled the hearing, which presumably validated his excuse for not appearing. *Id.*, Dkt. Nos. 150, 155. But Green thereafter moved to cancel the hearing. *Id.*, Dkt. No. 158.

Nearly a year later, following a flurry of appeals that Green took from Bankruptcy Court orders to the District Court, discussed *infra*, the Bankruptcy Court set an evidentiary hearing on PGOCS's motion to dismiss. *Id.*, Dkt. No. 188. At the hearing, the Bankruptcy Court dismissed the case, determining that cause for dismissal existed pursuant to 11 U.S.C. § 1307(c)(11) and that dismissal was in the best interest of the creditors and the estate. *Id.*, Dkt. No. 285.

## II.    Adversary Proceedings

In connection with his first bankruptcy case, Green commenced five separate Adversary Proceedings. *See* Adversary Proceeding Nos. 19-ap-00298-LSS, 19-ap-00308-LSS, 20-ap-00246-LSS, 20-00247-ap-LSS, and 21-ap-00065-LSS.

### 1.    *Adversary Proceedings Related to the Mortgage Claim*

Green commenced two separate adversary proceedings related to the Mortgage Claim. The Adversary Complaints contained the very same allegations of fact and requests for relief that Green had asserted in his Objections to the Mortgage Claim.

In the first Adversary Proceeding related to the Mortgage Claim, Adversary Proceeding No. 19-ap-0298-LSS, Shellpoint moved to dismiss, arguing that the Bankruptcy Court lacked jurisdiction over the proceeding because Green had filed a notice of appeal of the Bankruptcy Court's order overruling his Objection to the Mortgage claim. Adv. No. 19-ap-00298-LSS, Dkt.

No. 7.  Green never responded to Shellpoint's motion and the court dismissed the Adversary

Complaint with prejudice.  *Id.*, Dkt. No. 9.

Not surprisingly, Green filed a motion for reconsideration of the dismissal, which the

Bankruptcy Court denied, explaining that because of the pending appeal, it lacked jurisdiction over

the subject matter of Green's Objection to the Mortgage Claim, which was "effectively identical

to the Adversary Complaint."  *Id.*, Dkt. Nos. 13, 15.  Green noted an appeal to the District Court

of the order dismissing the Proceeding.  Civ. No. 19-3132-TDC.

While one of his several Fourth Circuit appeals was pending, Green filed a second

Adversary Complaint related to the Mortgage Claim, No. 20-ap-00247-LSS.  Shellpoint also

moved to dismiss that Complaint, arguing that the Bankruptcy Court lacked subject matter

jurisdiction because of the pending Fourth Circuit appeal.  *Id.*, Dkt. No. 15 ("In the instant

adversary action, Green makes the <u>same</u> arguments against the <u>same</u> parties that he made in the

prior adversary complaint and that are on appeal in the Fourth Circuit") (emphasis in original).

The Bankruptcy Court stayed the proceeding pending the outcome of the Fourth Circuit appeal.

*Id.*, Dkt. No. 19.  Even so, in flat-out defiance of the court's stay, Green filed a motion to compel

discovery and for sanctions, which the court was compelled to strike.  *Id.*, Dkt. No. 37.  Green then

moved for reconsideration, which the court denied, again due to the existence of the stay.  *Id.*, Dkt.

No. 42.  Green appealed the order to the District Court.  Civ. No. 21-680-TDC.

Despite the court's previous orders striking his filings during the stay, Green filed yet

another motion, this time asking the court to cancel all scheduled hearings.  The court explained,

for the umpteenth time, that his motion would be stricken due to the stay.  No. 20-ap-247, Dkt.

No. 59.  The court further ordered Green not to file any further motions during the stay without

first obtaining leave of the court. *Id.* Green appealed that order to the District Court. Civ. No. 21-1334-PJM.

Undeterred, Green then filed a motion for sanctions against the mortgage servicer, repeating his allegations that it had committed "fraud, negligence, gross negligence, intentional infliction of emotional distress, injurious falsehood and slander of title" and asked the court to award him $100,000 as well as to impose sanctions. No. 20-ap-247, Dkt. No. 75. Same old story: Green did not obtain approval prior to filing, so the court struck the motion. *Id.*, Dkt. No. 78. The court further ordered Green to show cause why his case should not be dismissed. Green appealed that order to the District Court. Civ. No. 21-2443-PJM.

2.   *Adversary Proceedings Related to the Child Support Claim*

Green commenced three Adversary Proceedings related to the Child Support Claim, asking for the same relief requested in his objections to the claim.

The first Adversary Proceeding related to the Child Support Claim, Adversary Proceeding No. 19-308-LSS, resulted in 126 docket entries posted over a period of two and a half years, including many motions by Green to reinstate his driver's license. In addressing the first of such motions, the court explained that it lacked jurisdiction because the Maryland Motor Vehicle Administration was not a party to the proceeding. No. 19-ap-308-LSS, Dkt. No. 9. Despite the court's order, Green filed another identical motion, which the court again denied. *Id.*, Dkt. No. 11. Green appealed the order to the District Court. Civ. No. 19-2853-TDC.

Green then moved for default judgment, asserting that he should be awarded $1,555,020 for various injuries caused by PGOCS's alleged misconduct, including intentional infliction of emotional distress, fraud, civil rights violations, wage garnishment, and suspension of his driver's license. *Id.*, Dkt. No. 28. The court denied the motion, noting that the defendants had not been

served and warning Green that failure on his part to effect proper service could result in dismissal. *Id.*, Dkt. No. 29.  Green appealed the order to the District Court.  Civ. No. 20-250-TDC.

While his appeals were pending, Green moved to compel discovery and for sanctions, which the court denied due to the pending appeals.  No. 19-ap-308-LSS, Dkt. Nos. 35, 41.  For the third time in the Adversary Proceeding, Green appealed to District Court.  Civ. No. 20-1201-TDC. The District Court dismissed the appeal, and Green appealed to the Fourth Circuit.  No. 19-ap-308, Dkt. No. 109.

While Green's appeal of the denial of his motion to compel discovery and for sanctions was pending, PGOCS moved to dismiss the Adversary Proceeding.  No. 19-ap-308-LSS, Dkt. No. 53.  Green opposed the motion, and the court set a hearing.  *Id.*, Dkt. No. 59.  Before the hearing, Green filed an amended motion to compel discovery and for sanctions, a motion for entry of default, and a motion to reinstate his driver's license.  *Id.*, Dkt. Nos. 61–62, 65.  He then filed a motion to cancel the hearing on the motion to dismiss, asserting that default judgment in his favor was warranted.  *Id.*, Dkt. No. 66.  The court denied Green's motions to compel discovery and for sanctions as well as the for the entry of default judgment because Green had failed to effect service on PGOCS.  *Id.*, Dkt Nos. 67–69, 71.  For the fourth time in the Adversary Proceeding, Green appealed to the District Court.  Civ. No. 21-2871-TDC.

Before his appeal was docketed, the Bankruptcy Court dismissed the Adversary Proceeding pursuant to Federal Rule of Civil Procedure 4(m) and Federal Bankruptcy Rule 7004(a) based on Green's failure to effect proper service, as it warned it might do.  No. 19-ap-308-LSS, Dkt. No. 97.  Green, of course, appealed, and the District Court dismissed the appeal.  Civ. No. 21-3183-TDC; No. 19-ap-308, Dkt. No. 109.  Green then appealed to the Fourth Circuit, which found no reversible error and affirmed.  *Id.*, Dkt. No. 127.

While his Fourth Circuit appeal was pending, Green commenced another Adversary Proceeding, asserting the same arguments against the same parties as he had in Case No. 19-ap-308-LSS.  No. 21-ap-065-LSS, Dkt. No. 1.  The Bankruptcy Court stayed the new proceeding because Green's causes of action were identical to the causes of actions he had asserted in other ongoing proceedings.  *Id.*, Dkt. No. 3.  True to form, Green filed yet another motion to reconsider, repeating his tireless argument that the child support debt was "illegal and void" and that the suspension of his driver's license denied him due process of law.   *Id.*, Dkt. No. 8.  The court denied his motion for the same reasons it had implemented the stay.  *Id.*, Dkt. No. 9.  Green appealed the order to the District Court.  Civ. No. 21-1335-PJM.

Green was neither discouraged nor deterred.  Despite his previous futile attempts to do so, he filed an Adversary Complaint against various Maryland state officials, including Christine Nizer, Chief Administrator of the Maryland Motor Vehicle Administration, in an attempt to have his driver's license reinstated, seeking, however, to have it happen without his having to make any child support payments.  No. 20-ap-246-LSS, Dkt. No. 1. Green accused the state officials of depriving him of various civil rights and deliberately causing him pain, suffering, and hardship, and asserted that the PGOCS program was a "complete and total fraud scheme," working in concert with other government agencies "to specifically defraud [him]."  *Id.*  Boldly, Green prayed for myriad forms of relief, including reinstatement of his driver's license and passport, this time asking for injunctive relief ordering that the PGOCS program be removed from the Federal Child Support Program and that he be granted declaratory relief to the effect that his child support order was unconstitutional and void.  *Id.*  The state officials moved to dismiss based on failure of service, lack of subject matter jurisdiction, and failure to state a claim.  *Id.*, Dkt. No. 16.

Green moved for the appointment of counsel. *Id.*, Dkt. No. 30. The court declined to grant the request, noting that it might not have inherent authority to do so, but that even if it did, appointment of counsel in civil actions should be allowed only in exceptional cases and his was not one of those. *Id.*, Dkt. 41. Green appealed the decision to the District Court. Civ. No. 21-936-PJM.

As in his previous Adversary Proceeding, rather than respond substantively to the defendants' arguments, Green moved to compel discovery and for sanctions. *Id.*, Dkt. No. 34. He also filed a motion for temporary and permanent restraining orders, repeating his shopworn arguments that he had been deprived of various constitutional rights and that the state officials had engaged in criminal activity. *Id.*, Dkt. No. 32. His prayer for relief was essentially the same. *Id.* The court denied the motion but noted that Green's prayers for relief would be considered in connection with the assertions in the Adversary Complaint. *Id.*, Dkt. No. 45. Green filed a motion for reconsideration, which was denied, *Id.* Dkt. Nos. 56, 65. Green appealed the denial to the District Court. Civ. No. 21-1332-PJM.

In the meantime, the Bankruptcy Court did allow some limited discovery in the case, but on August 5, 2021, it stayed the Adversary Proceeding in order to first resolve the Motion to Dismiss in Green's main Chapter 13 case. His modus operandi unaltered, Green appealed the order implementing the stay to the District Court. Civ. No. 21-2666-PJM.

## III.    Appeals to the District Court

Green's tactics resulted in twenty appeals to the District Court, including nine separate proceedings before the undersigned. Notably, the overwhelming majority of these cases were

dismissed either because Green failed to designate the record or file a timely brief or because he attempted to appeal a non-appealable order.[8]

    1.   *Failure to File Designation of Record*

Pursuant to Federal Rules of Bankruptcy Procedure, a bankruptcy appellant must file a designation of record on appeal within 14 days of the notice of appeal. Fed. R. Bankr. P. 8009(a)(1)(B). The Rules also mandate that an appellant serve and file a brief within 30 days after "the docketing of notice that the record has been transmitted or is available electronically." Fed. R. Bankr. P. 8018(a)(1). The Rules further provide that if an appellant fails "to take any step other than the timely filing of a notice of appeal," a district court hearing the appeal has the authority to "act as it considers appropriate," such as, by "dismissing the appeal." Fed. R. Bankr. P. 8003(a)(2).

Many times over, the District Court has informed Green of the rules requiring him to file and serve his record designation and submit a brief in connection with his appeals. *See, e.g., Green v. 1900 Capital Trust II, by U.S. Bank Trust New Rez, LLC*, Civ. No. TDC-19-2270, ECF Nos. 5, 10. *See also Green v. Prince George's County Office of Child Support,* Civ. No. TDC-19-2852 (quoting Rule 8018 and noting "Green has been previously informed of this rule"). Upon receiving Green's notices of appeal, the Court has mailed letters to Green explaining these requirements. *See Green v. Shellpoint, et al.*, Civ. No. PJM-21-1334, ECF No. 6 at 2. Even so, in the face of these notices Green has failed to designate the record in the majority of his cases before the District Court. *See* Civ. Nos. 19-2853-TDC, 19-3451-TDC, 21-680-PJM, 21-936-PJM, 21-1332-PJM, 21-1334-PJM, 21-1335-PJM, 21-1385-PJM, 21-2443-PJM, 21-2666-PJM. There is no question that his appeals deficient in this respect have been properly dismissed. So much for this tranche of appeals. A second tranche of appeals has been deficient for a different reason.

---

[8] A list of these cases and their dispositions set forth in Appendix 1 to this Opinion.

2.  *Attempts to Appeal Non-Final Judgments*

The District Court has jurisdiction to hear appeals of the Bankruptcy Court's "final judgments, orders, and decrees." 28 U.S.C. § 158(a). Bankruptcy orders are subject to a "relaxed rule of appealability" and are "immediately appealable if they 'finally dispose of discrete disputes within the larger case.'" *Mort Ranta v. Gorman*, 721 F.3d 241, 246 (4th Cir. 2013).

Nearly every appeal by Green has involved non-final orders, including orders denying his motions to appoint counsel, motions to compel the production of evidence, and motions to reconsider orders denying these motions. *See, e.g.*, Civ. Nos. 20-1201-TDC, 21-680-PJM, 21-936-PJM. Obviously a sound policy reason underlies the non-appealability rule, since the "just, speedy, and inexpensive" resolution of cases (*see* Fed. R. Civ. P. 1) could be hampered by numerous interlocutory appeals.[9] The Court recognizes that, generally speaking, pro se litigants are not ordinarily masters of civil and appellate practice and procedure.[10] In Green's case, however, among other things, he has been told over and over in various opinions, orders, and letters

---

[9] As an example, Green's initial bankruptcy petition remained open for nearly year and contained over 300 docket entries.

[10] The Court, however, does not see Green as a typical pro se litigant, even if in fact he never acts through a lawyer or has no legal training himself. What seems to be the case is that Green has located the Achilles heel of civil procedure in general, which he cleverly probes to perpetuate his long-term strategy of keeping his creditors at bay. Specifically, he has learned to exploit the time lag between the filing of motions, oppositions, and replies; between motions for reconsideration, oppositions, and replies; between motions to compel discovery, oppositions, and replies; between the sending of notices of hearings and the actual holding of hearings, then cancellation of the hearings; the time it takes for Judges to draft opinions and orders deciding motions; and the effect of stays and appeals.

There is also the way in which state courts can get played in connection with bankruptcy filings. Once a Suggestion of Bankruptcy is filed, proceedings in the state court invariably come to a halt. So for all the time it takes for the Bankruptcy Court to dismiss a frivolous petition (motions, oppositions, replies, appeals, etc.), for that much longer a state foreclosure proceeding is stalled. In view of this, as one of its sanctions the Court is imposing on Green, discussed *infra*, the Clerk of the Bankruptcy Court will be directed to promptly file a copy of the Court's Order of Sanctions in this case with the Clerks of the Circuit and District Courts for Prince George's County, Maryland.

that the District Court lacks jurisdiction over orders that do not "finally dispose of discrete disputes within the larger case." As he has with so many aspects of court opinions and orders, he has simply paid no mind.

## IV.   Appeals to the Fourth Circuit

Green instituted eight separate appeals of District Court judgments to the Fourth Circuit. On each appeal, the Fourth Circuit has either affirmed the judgment of the District Court or dismissed the appeal.

## V.   Second Bankruptcy Petition

Following the dismissal of his first Chapter 13 case, Green's mortgage servicers continued to pursue foreclosure proceedings and set a sale date for the Property in the Circuit Court for Prince George's County. Case No. 21-bk-17359-LSS, Dkt. No. 12 at 12. Green, however, filed another Chapter 13 bankruptcy petition, Case No. 21-bk-17359-LSS, which again had the effect of staying the foreclosure sale. As it happens, the bankruptcy petition was disposed of in quick fashion, but Green still managed to delay the state proceeding to some extent.

On January 18, 2022, the Bankruptcy Court entered an order striking Green's Certificate of Service and warned him that failure to file an Amended Certificate of Service could result in the court striking his Chapter 13 Plan. *Id.*, Dkt. No. 35. On January 31, 2022, PGOCS moved to dismiss the case pursuant to 11 U.S.C. § 1307(c)(11) for failure to pay child support. *Id.*, Dkt. No. 38.

Green never filed an Amended Certificate of Service. In consequence, on February 2, 2022, the court struck his Chapter 13 Plan and ordered him to show cause why the case should not be dismissed. *Id.*, Dkt. No. 41. Green filed both a response to PGOCS's motion to dismiss and to the court's show cause order. Once again, he claimed that the mortgage note was fraudulent,

but this time added that he was suffering from various medical issues.  *Id.*, Dkt. Nos. 47, 50.  The court directed Green to file an Amended Chapter 13 Plan.  *Id.*, Dkt. No. 52.  Yet again, Green failed to do so, and as a result the court dismissed his second petition.  *Id.*, Dkt. No. 60.

### VI.    Show Cause Order and Hearing

While the second bankruptcy petition was pending, the undersigned Judge engaged with nine of Green's pending appeals.  Based on its consideration of the appeals, on February 15, 2022, the Court dismissed all but one,[11] but at the same time issued a Show Cause Order, directing Green to show cause, in writing by March 15, 2022, why he should not be sanctioned for his multiple meritless bankruptcy appeals.  ECF No. 13.  The Order also noticed a hearing on the matter to be held in the District Court on March 31, 2022, and specifically informed Green that the hearing would go forward in his absence should he fail to appear.  *Id.*  In addition, the Court stated: "PENDING FURTHER ORDER OF THIS COURT, EXCEPT AS EXPRESSLY PROVIDED HEREIN, GREEN SHALL FILE NO MORE MOTIONS, BANKRUPTCY PETITIONS, NOR APPEALS OF BANKRUPTCY COURT ORDERS IN THE DISTRICT COURT FOR THE DISTRICT OF MARYLAND."  *Id.* (capitalization in original).

Green failed to submit any writing to the Court by March 15.  Accordingly, on March 23, the Court sent a Letter Order directly from Chambers to Green at his Accokeek address, reminding him of the March 31 Show Cause Hearing and again advising him that the hearing would go forward in his absence.  ECF No. 14.  Green failed to respond to this correspondence and failed to

---

[11] The single case left pending was the appeal presently before the Court, which will be dismissed for reasons set forth *infra.*

appear at the hearing.[12]  The Court proceeded with the hearing, during which it became abundantly

clear that Green's arguments have been consistently repetitious, meritless, and in bad faith.  In

short, his litigious conduct has been seriously abusive to the system.

During the Show Cause Hearing, a case administrator in the Bankruptcy Court Clerk's

Office testified that during his thirteen-year tenure, he had never seen a litigant file more appeals

to the District Court than Green has filed, characterizing Green's bankruptcy cases as "highly

unusual."  Show Cause Hr'g Tr., ECF No. 16 at 21:5–12.  The witness testified that, on average,

it takes some 90 minutes of administrative time to transmit a single case for appeal to the District

Court.  *Id.* at 12:22–23.  In addition, the witness testified that Green had not paid the appeal fee in

any of his twenty appeals.  *Id.* at 21:15–17.[13]

---

[12] To the extent Green may claim that he never received orders or letters, the Fourth Circuit has held
that "a letter properly addressed, stamped and mailed is to have been duly delivered to the addressee."
*Federal Deposit Ins. Corp. v. Schaffer,* 731 F.2d 1134, 1137 n. 6 (4th Cir. 1984) (quoting C.
McCormick, *McCormick's Handbook of the Law of Evidence* § 343 (1972)).

[13] A filing fee is supposed to be collected by the Bankruptcy Court for any appeal taken to the District
Court.  It currently stands as $298.  *See Filing Fees*, United States Bankruptcy Court for the District
of Maryland, https://www.mdb.uscourts.gov/forms/filing-fees (last accessed June 1, 2022).  A waiver
of the fee can be requested by those who are certifiably unable to pay, but any waiver must be granted
pursuant to motion and order.

In the case of Green (indeed, in all appeals), it appears that the Bankruptcy Court has allowed appeals
to go forward even where the fee is not paid and even where a formal motion for waiver is not made.
Nor does the District Court pursue the fee in these cases.  This is a regrettable practice.  Filing fees not
only compensate for the administrative time it takes the offices to process the cases for appeal.  They
create a disincentive for individuals who are otherwise able to file potentially unlimited, frivolous
appeals at no cost.  There is no question that the failure to insist upon payment of the filing fees in
Green's cases has facilitated his abusive filings as described in this Opinion.

A word, then, to the Clerk's Offices of both the Bankruptcy Court and District Courts: The collection
of fees both in connection with any initial filing in the Bankruptcy Court or appeal to the District Court
needs to be pursued without delay, unless a waiver is requested, and a waiver granted.

The Bankruptcy Clerk's Office reports that Green's unpaid appeals fees alone currently total $5,960.00
(= 20 x $298). None of these fees were waived.  Their payment will be ordered as part of the Court's
Order of Sanctions, *infra.*

A case administrator in the District Court Clerk's Office testified that Green had filed an excessive number of appeals, sometimes filing one case right after another, such that some of Green's cases have successive case numbers. *Id.* at 29:24; 36:2–12 ("[H]e files two to three cases simultaneously . . . for example, 21-1331, and then 21-1334 . . ."). The administrator further testified that Green had failed to designate the record in appeal in 16 of his 20 cases, despite have been made aware of the requirement to do so.[14] *Id.* at 30:15–19; 31:25–32:1–13.

There is no escaping the fact that the Bankruptcy Clerk's Office has been inundated with Green's filings. Additionally, according to the testimony, the Office has also been subject to continuous telephone contacts by Green, who frequently calls to inquire into the status of his cases and the orders and other filings sent to him.[15] *Id.* at 29:24–30:3, 38:14–25.

It is also clear beyond peradventure that Green's motions are both legally and factually without merit. Despite hundreds of docket entries and countless pages of briefing in several dockets, his disputes boil down to just two claims – that both the Mortgage Claim and Child

---

[14]  Green has been made well aware of the requirement to designate the record under Federal Rule of Bankruptcy Procedure 8009(a)(1)(B). *See, e.g., Green v. 1900 Capital Trust II, by U.S. Bank Trust New Rez, LLC,* Civil No. TDC-19-2270, ECF Nos. 5, 10. *See also Green v. Prince George's County Office of Child Support,* Civil No. TDC-19-2852 (quoting Rule 8018 and noting "Green has been previously informed of this rule").

[15] It is also worth noting that the Bankruptcy Judge who has presided over most if not all of Green's filings is listed as the Bankruptcy Judge with the most appeals in the entire Fourth Circuit, owing no doubt in large part to Green's abusive tactics.

Green's Show Cause Hearing expressly did not include representatives of the two creditors who have been the primary targets of his combative ways (the Mortgage Claim and the Child Support Claim), since the Court intended to focus on the burdens Green's actions have placed upon the court system. But it is obviously also true that Green's tactics have had a considerable impact upon his creditors and their representatives – counsel, who must file responsive pleadings and witnesses, who must appear at hearings.

Green's ploys may not only be exasperating for his opponents; they may even cause them at times to throw up their hands and put off dealing with him – precisely the result that Green presumably hopes to achieve.

Support claim are somehow illegal, invalid, or fraudulent. [16]  In continuing to reassert the same arguments in virtually identical pleadings—some of which had also been disposed of in state court—Green has clearly engaged in abusive tactics intended to prolong his bankruptcy litigation and stave off foreclosure of his residence and pay not one penny in child support.

## VII.    Third Bankruptcy Petition

Remarkably, on April 4, 2022, in direct violation of this Court's Show Cause Order, Green filed a third Chapter 13 bankruptcy case.  Case No. 22-bk-11755-LSS, Dkt. No. 1.  Four days later, Chapter 13 Trustee Timothy Branigan, filed a motion to dismiss.  *Id.*, Dkt. No. 10.  Trustee Branigan succinctly summarized the exhaustive and repetitive nature of Green's bankruptcy proceedings:

> There is nothing that can be accomplished in this case that the Debtor did not exhaustively, repeatedly, and tediously raise but failed to prosecute to conclusion in the 2019 and 2021 cases. Broadly, the Debtor contested two things: 1) his obligation for child support, the failure to pay such obligation, and the State of Maryland's suspension of his driver's license for such failure; and 2) the validity of the promissory note and deed of trust secured by the realty at 15416 Cedar Drive, Accokeek, Maryland, and the failure to make payments on such note.

> The docket in the 2019 case reflects 315 entries over 3 years, 5 separate adversary proceedings (19-298, 19-308, 20-246, 20-247, 21-065), at least 14 separate appeals to the District Court (TDC-19-3449, TDC 20-1765, TDC 20-1201, TDC-20-2871, TDC-20-3183, PJM-21-680, PJM-21-936, PJM-21-1332, PJM-21-1334, PJM-21-1335, PJM-21-1385, PJM-21-2441, PJM-21- 2443, PJM 21-2666), and 8 separate appeals to the Fourth Circuit (19-308,19-13565, 21-1036, 21- 1047, 21-1048, 21-1349, 21-1925, 21-1927). None of the appeals resulted in a favorable outcome for the Debtor. They were all ill-taken, sought interlocutory relief, lacked subject matter jurisdiction, or were denied for want of prosecution by the Debtor. The docket in the 2021 case reflects 68 entries in 6 months wherein the Debtor, again fruitlessly, denied his mortgage and child support obligations.

---

[16] A concerning aspect of Green's behavior is the casual way he claims his adversaries, private and governmental, have engaged in "fraud" or worse.  Fraud is a serious charge, which can malign decent, honest individuals, and should be alleged only in exceptional instances and only in good faith.  *Cf.* Fed. R. Civ. P. 9(b).  As the record in Green's cases show, his claims of fraud are universally and thoroughly groundless.

*Id.* at 1–2.  Trustee Branigan characterized Green's litigious behavior as nothing less than an attempt to evade his creditors and asked the Bankruptcy Court to dismiss not only the petition but as well to bar Green from receiving a discharge under the Bankruptcy Code in any case for two years.  *Id.* at 3–4.

On April 13, 2022, the United States Trustee also moved to dismiss the case, noting that it had been filed in violation of this Court's Order and was likely filed in bad faith.  *Id.*, Dkt. No. 11 at 1–3 ("It does not appear that the Debtor is desirous of confirming a plan to pay his creditors. Instead, it appears as though the Debtor is using the bankruptcy process to stave off foreclosure and to delay and frustrate the Prince George's County Office of Child Support."). The Trustee also asked the court to bar Green from refiling any bankruptcy petition for two years.  *Id.*

On April 20, 2022, the Bankruptcy Court dismissed Green's case pursuant to this Court's Show Cause Order.  *Id.*, Dkt. No. 17.  Noting Green's "incessant abuse of the Bankruptcy Code," the court stated that "a two-year bar to filing may well be the minimum necessary and appropriate to stem such abuse. However, such a bar is unnecessary at this time because Debtor is presently barred from filing any new bankruptcy petitions pursuant to the Order to Show Cause, which bar shall remain in effect pending further order of the United States District Court."  *Id.* at 2.

## VIII.   The Involuntary Bankruptcy Petition

On May 27, 2022, an involuntary Chapter 11 Petition was filed against Green.  *See* Case No. 22-bk-12906-LSS, Dkt. No. 1.  On June 1, 2022, the United States Trustee moved to dismiss the case, noting that the alleged creditor, Quatro Luci Realty Trust, did not appear to be a legitimate creditor and noting further that the proceeding might in fact be an indirect effort taken on Green's behalf to avoid the Court's Show Cause Order prohibiting him from filing any unapproved pleadings.  *Id.*, Dkt. No. 4.  The Trustee noted that the individual signing on behalf of the Trust,

Pamela Green-Usual, shared her surname with Green and that the Trust was otherwise unrepresented by counsel. *Id.*

On June 2, 2022, the Bankruptcy Court dismissed the involuntary petition, stating, in part: "The suspicious nature of the filing of this Involuntary Petition requires further investigation. However, the Court need not delay the dismissal of this involuntary case." *Id.*, Dkt. No. 5. The Bankruptcy Court ordered the United States Trustee to "investigate into whether Mr. Green and/or Ms. Green-Usual committed a crime in connection with the filing of the Involuntary Petition" and to file its results with the court.

## DISCUSSION

### I.    Legal Standard

Federal courts have inherent authority to enjoin litigants from abusing the judicial process and to sanction them for bad faith conduct. *In re Weiss* 111 F.3d 1159, 1171 (citing *Chambers v. NASCO, Inc.* 501 U.S. 32, 33–34 (1991). The Fourth Circuit has explained that "federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions*." Armstrong v. Koury Corp.*, 211 F.3d 1264 (4th Cir. 2000) (citing *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984) and *Graham v. Riddle*, 554 F.2d 133, 134–35 (4th Cir. 1977).

In addition to the Court's inherent authority to impose sanctions, both the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure expressly authorize sanctions against attorneys and unpresented parties who file pleadings not well grounded in fact or supported by law. Federal Rule of Bankruptcy Procedure 9011, which tracks the language of Federal Rule of Civil Procedure 11, provides:

"By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney **or unrepresented party** is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or for the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

(Emphasis added).  Bankruptcy Rule 9011, like Rule 11, empowers court to enter an order "describing the specific conduct that appears to violate subdivision (b) and directing . . . [a] party to show cause why it has not violated subdivision (b)."

The Advisory Committee Notes to Bankruptcy Rule 9011 make clear that the rule is intended to conform to Rule 11.  Because Bankruptcy Rule 9011 tracks the language of Rule 11, cases interpreting Rule 11 are applicable and relevant to Bankruptcy Rule 9011 cases.  *See In re Weiss*, 111 F.3d 1159 (4th Cir. 1997).

A party's pro se status does not immunize him from sanctions under Bankruptcy Rule 9011. *In re Weiss* at 1170 ("The fact that [the litigant] represented himself *pro se* in the proceedings below does not change our analysis . . . a pro se litigant has the same duties under Rule 9011 as an attorney.") (citing cases).  *See also Abbott v. Suntrust Mortgage, Inc.* 2009 WL 971267, at *4 (E.D. Va. 2009) ("Litigants proceeding pro se are liable for sanctions under Fed. R. Civ. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support.").  The rule itself makes clear that an attorney or pro se litigant who signs pleadings must make a reasonable inquiry into the factual and legal support for the allegations and prohibits the filing of pleadings for an improper

purpose, such as harassment, delay, or coercion.[17]  Fed. R. Bankr. P. 9011.  *See also Cooter & Gell v. Harmar Corp.,* 496 U.S. 384, 393 (1990) (plain language of Rule 11 makes clear that pro se litigants are subject to sanctions under the rule).

### A.  Improper Purpose

The examples set forth in Bankruptcy Rule 9011 "set[] forth a non-exclusive list of improper purposes, and '[t]he enumerated improprieties are examples only of the type of conduct proscribed by the Rule.'"  *In re Kersner*, 412 B.R. 733, 743 (Bankr. D. Md. 2009) (citing *Carefirst of Md., Inc. v. First Care, P.C.*, 422 F. Supp. 2d 592, 598 (E.D. Va. 2006).  Thus, improper conduct may include a variety of behaviors.  "[T]he purpose to vindicate rights in court must be central and sincere. Filing of excessive motions may sometimes constitute "harassment" under the rule even if the motions are well grounded. Likewise, filing a motion or pleading without a sincere intent to pursue it will garner sanctions."  *Robeson Defense Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 519 (4th Cir. 1990), *cert. denied* 499 U.S. 969 (1991).

### B.  Frivolous Claims, Defenses, and Other Legal Contentions

In determining whether a claim, defense, or legal contention is frivolous, courts apply an objective standard of reasonableness. "The legal argument must have absolutely no chance of success under the existing precedent to contravene the rule." *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir. 2002).  Further, an attorney or pro se litigant must conduct an adequate inquiry into the facts and law before he or she files the claim.  *In re Kersner*, 412 B.R. 733, 744 (Bankr. D. Md. 2009).

---

[17] Green is well aware of Rule 11 since he has filed his own motions for Rule 11 sanctions.  *See, e.g.,* Case No. 20-ap-247-LSS, Dkt. No. 75.

### C. Evidentiary Support for Allegations and Factual Contentions

If factual allegations are "unsupported by *any* information obtained prior to filing," a party

has violated Bankruptcy Rule 9011. *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th

Cir. 2006) (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (emphasis

in original). "This rule also empowers the district court to sanction a party or lawyer for 'insisting

[on] a position after it is no longer tenable.'" *In re Kersner*, 412 B.R. 733, 744 (Bankr. D. Md.

2009) (internal citations omitted). *See also* Fed. R. Civ. P. 11(b) Advisory Committee's Notes to

1993 Amendments).

## II.      Application of Bankruptcy Rule 9011

Against this legal background, it is clear that Green has filed frivolous pleadings not

grounded in fact or warranted by existing law.  For example, despite being told in multiple court

orders that a federal court may not disturb the state court child support order, Green has doubled-

down (Triple-downed? Quadruple-downed?) on his allegations regarding the validity of the Prince

George's County child support order, submitting multiple—essentially identical—pleadings

claiming that the order was invalid.  In addition, he has made various allegations that PGOCS

defrauded him and deprived him of his constitutional rights. Those arguments, too, have no support

in fact whatsoever.

Furthermore, Green has undeniably utilized his bankruptcy petitions for an improper

motive.  "An improper purpose may be shown by excessive persistence in pursuing a claim or

defense in the face of repeated adverse rulings." *Lewin v. Cooke,* 95 F. Supp. 2d 513, 527

(E.D.Va.2000) (internal quotations omitted).  This Green has profusely demonstrated in his attacks

on and claims of fraud by the mortgage servicers and child support authorities. Despite adverse

ruling upon adverse ruling, Green continues to traffic in these arguments.  He has sought hearings,

then sought to cancel or stay them, including an evidentiary hearing on his mortgage fraud claim. This behavior shows that Green has never intended to pursue his cases on the merits. At the end of the day, what Green is all about is delay and more delay.

Any assertion that he has been unaware of various procedural rules frankly pulls reason by the nose. Despite his apparent pro se status,[18] Green has been made well aware of the applicable procedural rules and legal principles. The Bankruptcy Court has explained to him time and again that it cannot disrupt the state court child support order or otherwise rehear issues previously litigated in state court. The District Court has laid out in detail the rules of procedure for appeals and explained to Green many times that it does not have jurisdiction to hear appeals of non-final orders of the Bankruptcy Court (and has even described for him what a "non-final" order is). Nevertheless, Green's mantra has been to attempt to revive dead issues, file frivolous and repetitive pleadings, appeal clearly non-final orders of the Bankruptcy Court, and ignore explicit Court orders that he desist from filing any pleadings at all without prior Court approval. These tactics constitute precisely the type of behavior that Bankruptcy Rule 9011 seeks to restrain.

Green's actions, including his numerous appeals of Bankruptcy Court orders to this Court, most assuredly warrant sanctions. There is no evidence that he has ever conducted an objectively reasonable investigation of his claims prior to pursuing them. More than that, Green failed to respond in writing to the Court's Show Cause Order by March 15 and failed to appear at the Court's Show Cause hearing on March 31. The Court concludes, along with the Chapter 13 and United States Trustees, that Green's true goal has always been to abuse the bankruptcy process for his own benefit. The nature and severity of Green's misconduct weigh heavily in favor of sanctions.

### III.    Appropriate Sanctions

---

[18] *But see supra* n.10.

Rule 9011(c) provides that, if "the court determines that subdivision (b) has been violated, the court may, subject to [certain] conditions, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." The specific limitations on the nature of the sanction(s) that may be imposed are set forth in subdivision (c)(2), which provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

> (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

> (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

Fed. R. Bankr. P. 9011(c). Sanctions should be sufficient to serve the purposes of Rule 9011, but not greater than necessary to deter abuse. *In re Kunstler* at 522.

Having concluded that Green has violated Bankruptcy Rule 9011 in numerous ways, the Court considers what sanctions are appropriate.

### A.  Monetary Sanctions

 In deciding the appropriateness of a monetary sanction, the court should consider "(1) the reasonableness of the opposing party's attorneys' fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *In re Kunstler* at 523.

Green's violations have been serious.  Given that he has accused both his mortgage servicers, PGOCS, and other state officials of engaging in criminal and fraudulent behavior (among other things), it is clear that he made these frivolous and nonetheless offensive arguments

with an expectation that his adversaries would be required to defend themselves and naturally incur expenses in doing so. However, to this point at least, in none of his proceedings have Green's adversaries made a showing of the quantum of attorneys' fees and costs that would justify awarding them attorneys' fees at this time. In addition, given Green's occasional applications to proceed in forma pauperis and requests to proceed as an indigent, it may be that Green has neither the ability nor the willingness to pay a monetary penalty.[19]

Attorneys' fees aside, the Court is advised that Green has failed to pay the fee for filing an appeal in all twenty of his District Court cases. The total amount stands at $5,960.00. Green has asked the Bankruptcy Court for an exemption from the appeals fee in just three of his cases. All three of those requests were denied. Considering his non-payment of fees, coupled with his Bankruptcy Rule 9011 violations, the Court finds it appropriate to require Green to pay any and all filing fees not yet paid or otherwise waived. In addition, should Green wish to commence any other cases in this Court, he will be required prepay the initial and subsequent appeals fees or otherwise obtain permission from the Court to proceed in forma pauperis. Failure to pay a fee or obtain a waiver (pursuant to motion and order) will result in automatic dismissal of any and all future actions filed by Green.

### B. Nonmonetary Sanctions

Nonmonetary sanctions are appropriate when necessary to deter future abuse. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (citing *In re Kunstler*, 914 F.2d 505,

---

[19] The Court specifically declines at this time to decide whether Green is financially unable to pay a monetary penalty.

The Court notes that applications by a pro se bankruptcy filer to proceed without the payment of fees are quite summary as to the information they seek and are rarely second-guessed by the Clerk's offices or Judges. It would certainly be well at some point for an adversary of Green (or even a Judge sua sponte) to engage in a detailed examination of Green's true financial status.

522 (4th Cir 1990)). *See also In re Kersner*, 412 B.R. 733, 747 (Bankr. D. Md. 2009) (imposing nonmonetary sanctions when pro se litigant "filed and maintained [his bankruptcy] case without justification in an effort to prevent the Movants from pursuing collection of their nondischargeable claim against him.").

The Court has found that Green has filed repetitive, successive appeals of Bankruptcy Court orders to this Court in a blatant effort to prevent his creditors from pursuing their rights. He has managed to succeed in that endeavor for a long time. As such, appropriate sanctions, limited to what is sufficient to deter repetition, must be imposed in order to limit the effect of his conduct on the ability of creditors to pursue their rights. To be sure: Any meritorious claim or defense on Green's part may, subject to conditions, still be heard by the Bankruptcy or District Courts, but his unvarying tendency to be frivolous and vexatious must be curtailed.

Accordingly, the Court directs that, in the future, no motions for appointment of counsel, no motions for extension of time, and no motions for stays by Green should be granted, unless good cause is shown in advance. In addition, as the Court will now discuss, a pre-filing injunction will be imposed upon Green as to any filings he may wish to enter in either the Bankruptcy Court or District Court, with a warning to him that he may be subject to contempt proceedings, including criminal contempt, if his vexatious conduct continues.

    *1.*  *Pre-filing Injunction*

The All Writs Act, 28 U.S.C. § 1651(a) (2012), permits a federal court to restrict access to the courts where it is shown that a litigant is abusing that right through the repeated filing of vexatious and malicious complaints. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Because district courts have inherent power to control the judicial process and redress conduct that abuses that process, there are no exceptions for self-represented litigants. *Silvestri v.*

*Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted).  While limiting a self-represented litigant's free access to the courts must be approached cautiously and restrictions should be imposed only if "exigent circumstances" exist, continuous abuse of the judicial process by a pro se litigant by filing meritless and repetitive actions will be considered "exigent."  *Cromer*, 390 F.3d at 818.

The Fourth Circuit has set out relevant considerations for determining whether to impose restrictions on a litigant's access to courts and has instructed district courts to:

> weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.*  All of these circumstances justify issuing a prefiling injunction against Green.

As detailed, Green has a history of filing "vexatious, harassing, or duplicative" lawsuits against the same parties involving the same issues.  *Id.*  The multiplicity and vexatious nature of Green's motions and appeals have been well established.  As the Court has catalogued, the District Court and the Bankruptcy Court have laboriously explained to Green how and why his filings have been rejected, yet he has persisted in filing pleadings repeating precisely the same arguments.  The first factor, then, weighs in favor of the imposition of a prefiling injunction.

Second, the record is ample in showing that Green has consistently lacked a good faith basis for pursuing the litigation.  His appeals are no more than bootless attempts to relitigate issues that have already been adjudicated and to delay the opportunity of his creditors to pursue their rights.  Objectively speaking, Green cannot claim that he has a good faith basis for believing that his arguments will become meritorious simply because he raises them repeatedly and in different proceedings.  The Court concludes that, throughout, Green has been litigating for reasons other

31

than in good faith. The second *Cromer* factor, then, also weighs in favor of the imposition of a prefiling injunction.

Third, Green's filings and appeals have placed a significant burden on both the Bankruptcy and District Courts. As documented, *supra*, Green has launched twenty bankruptcy appeals, nearly all of which have been dismissed for failure to designate the record and/or file an appellant brief as required by the Rules of Bankruptcy Procedure. *See* Appendix 1. Fifteen involved non-appealable, non-final Bankruptcy Court orders. Valuable time has been spent by the Bankruptcy and District Court Clerk's Offices processing Green's cases for appeal. Bankruptcy and District Court Judges have had to review cases and draft opinions and orders of dismissal. The limited resources of the Bankruptcy and District Courts should not have to be spent again and again dealing with Green's baseless filings. The Court finds that the third *Cromer* factor weighs in favor of the imposition of a prefiling injunction.

Fourth, alternative sanctions to a pre-filing injunction are inadequate. Green ignored the Court's Order to Show Cause dated February 15, 2022. ECF No. 13. He failed to respond in writing as directed, failed to appear at the Show Cause Hearing as direct, and instead—remarkably and in clear contravention of that Order—filed a further petition in Bankruptcy Court without this Court's prior approval. Also, as noted, it is unlikely, even if he is able, that Green would acquiesce in paying a monetary fine. The only effective way to avoid the expenditure of resources to process and adjudicate Green's repetitive filings is to enter a prefiling injunction. *See Randolph v. U.S. Att'y Loretta Lynch*, No. CV GLR-15-1311, 2015 WL 11022851, at \*2 (D. Md. June 1, 2015), *dismissed sub nom. Randolph v. Lynch*, 619 F. App'x 240 (4th Cir. 2015) (determining that a prefiling injunction would be the "most judicious, measured, and efficient way to avoid the

expenditure of further resources adjudicating . . . meritless claims" when a pro se litigant filed multiple frivolous lawsuits and failed to accept the court's earlier orders regarding her claims).

In sum, all factors weigh in favor of the imposition of a pre-filing injunction upon Green. The Court accepts that "the imposition of a pre-filing injunction should be approached cautiously, and that restrictions should be imposed only if 'exigent circumstances' exist, such as continuous abuse of the judicial process by filing meritless and repetitive actions. *Randolph*, at *3 (citing *Cromer*, 390 F.3d at 818). In *Randolph*, the Court determined that exigent circumstances existed and that a pre-filing injunction was necessary because there was "no indication that [the litigant's] pattern of filing meritless and repetitive actions [would] cease in the future." Exigent circumstances definitely exist here, as there is little indication that Green intends to cease his abusive conduct. *See supra,* Background, Parts VII and VIII.

Yet again, the Court is mindful that Green is a pro se litigant.[20] Absent exigent circumstances, courts should "not in any way limit a litigant's access to the courts," especially if litigants are unrepresented. *Cromer* at 818. Thus, a litigant has the right to be heard before a pre-filing injunction is entered. *Id.* at 819–20. Further, a pre-filing injunction must be "narrowly tailored to fit the specific circumstances at issue." *Id.* at 818. Green had his chance to Show Cause in writing on March 15 or after and to state his case in person at the Show Cause Hearing on March 31. He did neither.

In view of this, Green and anyone acting on his behalf is advised (as are they) that he is (and they are) enjoined for a period of eighteen months from the date of the Order of Sanctions that accompanies this Opinion, from instituting any proceeding of any kind in the Bankruptcy Court and any civil case of any kind in the District Court. Thereafter, Green will remain subject

---

[20] *But see supra* n.10.

to a pre-filing screening by the undersigned (or designated substitute Judge) as follows: The
Clerk's Office of the Bankruptcy and District Courts will be directed to refer any and all of Green's
proposed filings in the future to the undersigned (or substitute) for review before entering them on
the docket.  Absent prior approval of the undersigned (or substitute) that the filing may be posted
to the docket, the Clerks will be directed to return the proposed filings to Green.

In addition, in connection with any filing (bankruptcy petition, bankruptcy appeal or
otherwise), Green and anyone acting on his behalf will be required to submit a cover sheet to the
undersigned (or successor) indicating the nature of his proposed filing, the claims and arguments
contained therein, and how (if at all) they relate to any prior proceedings Green has had before
either the Bankruptcy or District Courts, and/or how they are new and different from any previous
proceeding.  Based on this information, the Court, following its pre-filing review will then
determine whether the new case can go forward.

    2.  *Contempt*

Finally, given that Green has filed motions while stays were in place and that he instituted
a third bankruptcy proceeding in direct contravention of this Court's Show Cause Order stating
that he needed to obtain pre-filing approval by the Court, the Court finds that his behavior has
reached the point where the Court, if it chose, could subject him to a contempt hearing right away.
*See In re Walters*, 868 F.2d 665, 669 & n.2 (4th Cir. 1989) (explaining that 11 U.S.C.
§ 105(a) allows courts to exercise civil contempt powers sua sponte when "necessary or
appropriate to enforce or implement court orders or rules or to prevent an abuse of process").  The
Court, however, does not move directly to contempt proceedings at this time. But if and when civil
contempt proceedings are deemed insufficient and the only way to deter Green from disrespecting
Court orders would be through criminal contempt proceedings, the Court will have the option of

referring him to the Office of the U.S. Attorney or of appointing a special prosecutor for prosecution.  A conviction of criminal contempt could lead to incarceration.  Green is therefore warned that if he persists in his vexatious conduct in the future, he may face contempt proceedings, civil and/or criminal in nature.

## THE PRESENT BANKRUPTCY APPEAL

The present appeal, Civ. No. 21-2441-PJM, is the sole remaining case before this member of the Court.  Here, Green appeals the Bankruptcy Court's September 20, 2021 Order dismissing his first bankruptcy case pursuant to 11 U.S.C. § 1307(c)(11), which found that dismissal was in the best interests of creditors and the state.  In reaching its determination, the Bankruptcy Court considered that Green was obligated to pay child support pursuant to a valid state court order and that the uncontroverted evidence showed that he had not made appropriate payments on that obligation for a lengthy period of time.  Furthermore, the court determined that Green's arguments regarding the state court child support order were barred by *res judicata*, collateral estoppel, and/or the *Rooker-Feldman* doctrine.

Green's appeal from this case was docketed in this Court on September 24, 2021.  On October 13, 2021, more than fourteen days later, Green filed an Emergency Motion to Stay Pending Appeal (which the Court denied on February 15, 2022), but he thereafter did not designate the record.  ECF Nos. 3, 9.  On November 10, 2021, Green filed an untimely motion for extension of time to file his opening brief, which is currently pending.  ECF No. 10.

As the Court has noted, pursuant to Federal Rules of Bankruptcy Procedure, a bankruptcy appellant must file a designation of record on appeal within 14 days of the notice of appeal.  Fed. R. Bankr. P. 8009(a)(1)(B).  The Rules also make plain that an appellant must serve and file a brief within 30 days after "the docketing of notice that the record has been transmitted or is available

electronically." Fed. R. Bankr. P. 8018(a)(1).  The Rules further provide that if an appellant fails "to take any step other than the timely filing of a notice of appeal," the district court hearing the appeal has the authority to "act as it considers appropriate," such as, by "dismissing the appeal." Fed. R. Bankr. P. 8003(a)(2).

Before dismissing an appeal under Rule 8003(a)(2), the court must take at least one of the following steps: "(1) make a finding of bad faith or negligence; (2) give the appellant notice or an opportunity to explain the delay; (3) consider whether the delay had any possible prejudicial effect on the other parties; or (4) indicate that it considered the impact of the sanction and available alternatives." *In re Serra Builders, Inc.*, 970 F.2d 1309, 1311 (4th Cir. 1992).

The Court finds that dismissal of this appeal is appropriate.  As discussed at length in this Opinion, Green has demonstrated an unbroken history of bad faith in virtually all his bankruptcy proceedings and appeals.  He has ignored the Court's Show Cause Order.  He has filed a petition without obtaining pre-approval by the Court, as prohibited by the Show Cause Order.  He has been given ample time to explain his conduct but has never chosen to do so.  Green's motion for extension of time, therefore, will be denied and the present appeal will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court will impose the following sanctions upon Green which, despite the dismissal of the appeal in this particular case, will be the subject of a separate Order and, for enforcement purposes, will remain operative.

Monetary sanctions are imposed in an amount of $5,960.00, which is the sum of all filing fees for appeals from the Bankruptcy Court to the District Court, none of which have been paid by Green.  Green will be permitted to pay this sum in installments over time as set forth in the Order of Sanctions.

Green is further advised that should he wish to commence any future actions in either the Bankruptcy or District Court (including appeals from the Bankruptcy Court to the District Court), he will be required to prepay his filing fees in full, but if he seeks to proceed in forma pauperis status he must do so in every case by motion and await the Court's ruling on his motion. The Clerks of the Bankruptcy and District Courts are directed not to docket any filings by Green until he either pays the appropriate filing fee or obtains, upon motion, a waiver of the fee by the Court.

Green shall not be granted any motions for appointment of counsel, for extensions of time, or for stays, unless he demonstrates good cause for such a motion.

Green is advised that he is enjoined, for eighteen months from the date of this Opinion and Order of Sanctions, from instituting any bankruptcy petition or motion in the Bankruptcy Court or any civil case in the District Court. Thereafter, Green will be subject to pre-filing screening by the undersigned or a duly named substitute. The Clerk will be directed to refer all of Green's future filings to the undersigned for review (or substitute), before entering them on the docket. Absent prior approval by the undersigned (or substitute), the Clerk will be direct to return the new filings to Green.

Failure of Green to comply with any provision of this Order may lead to the initiation of civil and/or criminal contempt proceedings against him.

This Order shall apply not only to Green, but to any person or entity, directly or indirectly acting on Green's behalf.

Green's Motion for Extension of Time to File Appellant Briefs (ECF No. 10) is **DENIED**.

Civil Case Number PJM-21-2441 is **DISMISSED**, except that the sanctions imposed upon him by the separate Order of Sanctions filed herewith will remain operative for enforcement purposes.

Green is advised that should he wish to appeal this Opinion and its accompanying Orders, he is granted leave to do so, and in that regard, he shall comply with the Federal Rules of Appellate Procedure, especially Federal Rule of Appellate Procedure 4(a)(1)(A).

The terms of the Order of Sanctions are not stayed during the pendency of any appeal Green may take herefrom, including but not limited to, the prohibition against any filings by him in the Bankruptcy or District Courts for a period of eighteen (18) months forward and thereafter only with pre-filing approval.

Separate Orders will **ISSUE**.

Date: June $\underline{16}$, 2022

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

## APPENDIX 1

| | District Court Case | Case Caption | Bankruptcy Court Order(s) Appealed | Disposition |
|---|---|---|---|---|
| 1 | 8:19-cv-02270-TDC | *Green v. 1900 Capital Trust II, BY U.S. BANK TRUST NewRez LLC* | Order overruling Green's Objection to Appellee's Proof of Claim | Affirmed in part, vacated in part and remanded in part. Vacated and remanded only as to Green's argument regarding the fraudulent nature of the Note |
| 2 | 8:19-cv-02852-TDC | *Green v. Prince George's County Office of Child Support* | Order overruling Second Objection (for reasons stated in order overruling first objection) | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |
| 3 | 8:20-cv-01201-TDC | *Green v. Prince George's County Office of Child Support Enforcement et al* | Order denying Green's Motion to Compel Discovery and for Sanctions | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |
| 4 | 8:19-cv-02853-TDC | *Green v. Prince George's County Office of Child Support Enforcement et al* | Order denying Motion for Restoration of Driver's License and Passport | Dismissed - failure to designate record |
| 5 | 8:19-cv-03132-TDC | *Green v. Shellpoint Mortgage Servicing et al* | Order of Dismissal (dismissing adversary proceeding) | Affirmed |
| 6 | 8:19-cv-03449-TDC | *Green v. Prince George's County Office of Child Support* | Order denying Green's Motion to Deny/Dismiss PGOCS's Proof of Claim | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |
| 7 | 8:20-cv-00250-TDC | *Green v. Prince George's County Office of Child Support Enforcement et al* | Order denying Request for Clerk's Entry of Default | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |
| 8 | 8:20-cv-01765-TDC | *Green v. Prince George's County Office of Child Support* | Order denying Green's Motion to Dismiss PGOCS's Motion to Dismiss | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |

| 9 | 8:20-cv-02871-TDC | *Green v. Prince George's County Office of Child Support* | Appeal of five orders in adversary proceeding: Order denying Motion to Compel; Order denying Motion for Entry of Default; Order denying Green's Motion to Reinstate drivers license and passport; Order to Green to conduct proper service; Decision stating that Green's Amended Request for Judicial Notice would be considered later | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |
|---|---|---|---|---|
| 10 | 8:20-cv-03183-TDC | *Green v. Prince George's County Office of Child Support Enforcement et al* | Order of Dismissal (dismissing adversary proceeding) | Dismissed - lack of jurisdiction (order not properly appealable or did not involve final judgment) |
| 11 | 8:19-cv-03451-TDC | *Green v. Shellpoint Mortgage Servicing* | Order Denying Motion to Strike | Dismissed - failure to designate record |
| 12 | 8:21-cv-00936-PJM | *Green v. Frosh et al* | Order denying Motion to Appoint Counsel | Dismissed - failure to designate record (also order not properly appealable) |
| 13 | 8:21-cv-01332-PJM | *Green v. Nizer et al* | Order denying Motion for Temporary/Permanent Restraining Order | Dismissed - failure to designate record (also order not properly appealable) |
| 14 | 8:21-cv-01334-PJM | *Green v. Shellpoint Mortage Services et al* | Order striking Motion to Cancel Fraud Proceedings | Dismissed - failure to designate record (also order not properly appealable) |
| 15 | 8:21-cv-00680-PJM | *Green v. Shellpoint Mortgage Services et al* | Order denying Motion to Reconsider Order Striking Motion to Compel | Dismissed - failure to designate record (also order not properly appealable) |
| 16 | 8:21-cv-01335-PJM | *Green v. Prince George's County Office of Child Support, Prince George's County Municipal Corporation* | Order denying Motion to Reconsider Stay in Adversary Proceeding | Dismissed - failure to designate record (also order not properly appealable) |
| 17 | 8:21-cv-01385-PJM | *Green v. Branigan* | Order denying Motion to Dismiss Pending Indigency Hearings and Appeals | Dismissed - failure to designate record (also order not properly appealable) |

| 18 | 8:21-cv-02441-PJM | *Green v. Prince George's County Office of Child Support et al* | Order of Dismissal (dismissing bankruptcy case) | *Present case* |
| 19 | 8:21-cv-02443-PJM | *Green v. Shellpoint Mortgage Services et al* | Order Striking Motion for Sanctions and Order to Show Cause | Dismissed - failure to designate record (also order not properly appealable) |
| 20 | 8:21-cv-02666-PJM | *Green v. Branigan* | Order Staying Adversary Proceeding | Dismissed - failure to designate record (also order not properly appealable) |